We'll call the second case of the day, Brown v. Smith, 15-1114. Mr. Craig, whenever you're ready. Good morning, Your Honor. May it please the Court, This appeal presents three issues for the Court's review. First, a question of law, whether an employer may enforce a written job standard set forth in a reliable written job description that was prepared by an outside party before litigation and had been in place a long time. That's what Mayor Kevin Smith and the City of Anderson did in this case. The second relates to the jury instruction the district court provided to the jury, which included the length in terms of determining what is an essential job function, the length of time that a job, that a person spent on a particular task. We contend that was erroneous in this case because it was misleading. It was undisputed that the plaintiff, Mr. Brown, spent, and others, Mr. Brown spent no time, but others in his position spent little time driving a bus. However, the City of Anderson had reasonably concluded it was an essential job function because of the emergency circumstances in which that circumstance might arise. And the third issue is whether the plaintiff failed to mitigate his damages where he sought no employment in a related field but instead tried to start his own business. Well, I'm going to ask you about a case that we issued after your briefs were filed, Shell v. Smith. Are you familiar with that? Yes, I am, Your Honor. Because there we said a jury needed to decide whether driving a bus was an essential function of another position in Anderson. In light of that case, do you agree that whether having a CDL is an essential job function is a fact-based question, not a legal one? I do not. In this case, Your Honor, in the Shell case, the plaintiff was a mechanics helper who was required under a job description to have a CDL, albeit without a passenger endorsement. The written job description in that case, however, which the court focused upon in its opinion, was that, and let me get the exact language from the opinion, the job holder, quote, may occasionally drive and deliver buses to various field locations. That's in contrast to the more definitive requirement in this case for Mr. Brown, who occupied the position of supervisor, which was possession of a valid commercial driver's license with proper endorsement and demonstrated safe driving. But we said in Shell that it's not just the job description, that we have to look at all the circumstances concerning the position and the point of the position and that kind of thing, and that the job description is just one factor to consider. The court did say that in the case. I would contend that that was based upon a somewhat more equivocal job description. The regulations in our prior cases, including Miller against Illinois Department of Transportation, have repeatedly made clear the job description is just one factor. It's not like the First Amendment issue where job descriptions tend to be given much more and usually dispositive weight. So I have real trouble with this if we reach the merits. But I'm not sure we can even reach the merits of that question since you're asking us after a trial to revisit a question decided on summary judgment. And you're relying to do that on Houskins against Sheehan, which is not easy to reconcile with Unitherm. I'll invite you to do that in a moment. But I have a harder time reconciling your approach with the Supreme Court's more recent decision, Ortiz versus Jordan, where the court phrased the question this way. May a party appeal an order denying summary judgment after a full trial on the merits? Our answer is no. Your Honor, we're relying on this Court's previous decisions that, in the case of a question of law, that may be preserved because the sufficiency of the evidence developed at trial doesn't change the answer one way or the other. And that was the Court's holding in Houskins, and that was also the Court's holding in Kemptall versus ZR Energy. Can you reconcile those with Ortiz against Jordan? Ortiz involved the defense of qualified immunity, which the defendants tried to argue was a question of law like this, and the Court said nothing to it. You have to look at facts and law to decide that kind of question, just as you do here. Right. And, I mean, in some sense, in every case, you have to look at facts and law because you have to know whether a question can be decided as a matter of law. I mean, there are qualified immunity cases which hinge on disputed issues of fact. There are some that are appropriate to decide as a matter of law, and that can affect the outcome. What sounds like the power of the appellate court to address the question depends on a very, very fuzzy line under your approach. As opposed to the Supreme Court's answer in Ortiz, our answer is no. It is not as clear as an unequivocal no, and the city believes that that position is consistent with this Court's prior holdings. If the Court determines that its holdings do not survive the decision in Ortiz, then we concede that review is foreclosed here because we are on the question of law because we are asking for review of the summary judgment motion rather than a post-verdict motion. But even if the Court decides that it cannot review the district court's summary judgment order,  the first is whether it was an erroneous jury instruction to instruct the jury that, quote, the amount of time spent on the job performing the function in question should have been put before the jury's consideration when everyone acknowledged that there was little time spent by a supervisor performing this function. But see, then you run into Schell again because in that decision we said the amount of time spent is a factor that can be considered. It can be considered, and in Schell, because again of the somewhat equivocal job description, the Court found it was appropriate to consider. But here that there was undisputed evidence, and this was both at the summary judgment stage and at trial, that there were exigent circumstances which would require a street supervisor to drive a bus, and every street supervisor who testified, except for Mr. Brown, testified that he had, in fact, driven a bus in these kinds of emergency circumstances. And that was a very low percentage of their time, correct? It was a very low percentage. Maybe once or twice? Once or twice per year, I think, would be a fair summary of their testimony. Presumably an awful lot of people who work for the bus company have CDL licenses, right? Well, the only people required to have a CDL license with a passenger endorsement are the bus drivers and the street supervisors. The mechanics and the mechanics helper, such as Mr. Schell, are required to have a CDL to move the buses on the lot and sometimes on the streets of the city of Anderson, but they do not have a license that allows them to carry passengers. Mr. Brown argued that this wouldn't be a problem because there were extra board drivers who could come out, and that may be true in some cases, but it remains the fact that, first, you would have to pay the extra board driver for the time that would otherwise be done by a salaried employee, The Americans with Disabilities Act requires some flexibility from employers. I really have trouble seeing how this is not a jury question, at best. Well, Your Honor, if it is a jury question, we think in circumstances where an employer has made a reasonable determination that a job function goes to the heart of the operation, it's misleading to instruct the jury that the time spent on the job is relevant. And we rely specifically on the Bassett case, in which the court held that simply because an employee spent little time on a particular job function did not warrant a conclusion. In that case, it was 45 minutes every day, right? And here we're talking about maybe once a year, and in Mr. Brown's actual experience, never, right? That's about as far from an essential job function as I can imagine. Well, I disagree, Your Honor, because, again, the situation where the function is to be exercised is an emergency situation, with a bus breakdown or a driver being ill or otherwise incapacitated. So are you saying it was improper to have that evidence presented, that he never did it? That he never had to perform in this emergency situation? We're not arguing that it was improper for him to testify. Because if there was ever a factual scenario where how much time was spent mattered, it would certainly seem to be this case where he never did it. I understand there were other people who said once or twice a year. So, I mean, if we buy what you're trying to sell, really, I mean, it becomes irrelevant how much time is spent on the job. And in the circumstance where an employer has made a determination that an emergency function should be performed by a certain employee, we do think the amount of time is irrelevant, and that's... Yeah, and so that's where you just run right up against the case law on that. I mean, I get that you... Not to mention the regulations. Right. Where number subsection 1 is the job description that you want to hang your hat on, and number 3 is the amount of time spent on the job performing function. Right. And it is the regulation, and it is certainly relevant in many circumstances. But, again, here the city had determined that the supervisor should be the people responsible for responding in emergencies, driving the bus, and they were the only people other than the bus drivers who had the CDL with the passenger endorsement. And, you know, the court's own pattern instructions don't include that factor because there are cases such as this where it is not an appropriate factor because emergencies, we all hope, don't arise. So do you think that adding this factor will now be part of the jury instructions, given the fact that we ruled that way in Shell? Or would it be your position that that shouldn't even be in the jury instruction? It's certainly our position it should not be in the jury instruction in this case. There may be other circumstances, and Shell may be one of them, where the amount of time could be relevant. But, again, in this case with an emergency function that Mr. Brown and the others were asked to perform, we believe the amount of time is not. I see I'm out of rebuttal time. I will reserve the remaining time. All right. Thank you, Mr. Macy. Good morning. Jeff Macy for the appellee, Jack Brown. With respect to a couple points, I think in the Ortiz case, the defendant had briefed the issue of qualified immunity on the summary judgment motion, had lost it, then didn't raise the issue at the trial, and then after the trial appealed the summary judgment issue, and the court said no. I mean, in many respects, this case is even more clear cut than that because the jury was instructed on the issues that the defendant is now raising as, quote, pure questions of law before the court. And the jury was instructed on the issue of what a qualified individual was. The jury was instructed on the essential function issue. So it's kind of awkward to even argue about the jury verdict in this case because it all depended on the sufficiency of the evidence. And there's no challenge to the sufficiency of the evidence in this case. You know, in terms of the emergency, whether Mr. Brown had to drive the bus in cases of an emergency, we talked about that quite a bit at the trial. If you look in both parties' closing statements, mention it, and we teased out through the evidence in the case. We had two current street supervisors. We had two former street supervisors. We had the former general manager of the department. We had my client. We had the human resources head for the city. We had the person who created the job descriptions. All of these people were talking about, what does this position have to do? What does this position have to do? And at the end of the case, the jury got a list drawn from the regulations. I didn't pull that out of thin air. That's from the regulations that have been adopted repeatedly by this court, even if the shell case hadn't been decided before. Now it was adopted in Kaufman, adopted in Miller, adopted even in the BASIF case that the defendant is relying on, all of which list those things. And they say the jury may consider. You may consider. And counsel for defendant and I argued to the jury at the close of the case which factors they should consider. And counsel for defendant said the job description. And I said, well, that's only one part of it. And the other things you need to consider is the fact of the experience of my client who had prior income to the job, the experience of the current income to the jobs, the consequences of not requiring my client to perform the function, and the time spent. All of which are just a big factual stew that the jury is supposed to consider in an essential function case. So I just want to bracket that because I think either legally. Counsel, would you mind keeping your voice because our mic, we're trying to record it. We just want to make sure we get every word you're saying. That's okay. Golden word. Go ahead. Either legally or factually, I think the result is the same. And I don't understand a situation where the defendant can claim that an instruction that correctly states the law. There are two things to consider, whether it's an abuse of discretion, whether a jury instruction correctly states the law, and whether it misled the jury. Well, it correctly stated the law. How can that be an abuse of discretion? The final piece of the puzzle are the damages that my client was awarded. And just to bracket, I think the court's order in this case, we did not exactly get a runaway jury in this case. My client got a year of back pay and $25,000 in compensatory damages. The year of back pay was limited by, as my client conceded, he became increasingly sick and was fully disabled. A year after he was terminated, within two or three weeks after he was terminated, he immediately started to try and pull campers that didn't require a commercial driver's license. Again, we're talking about the whole stew of the facts in the trial. The evidence in this case was that my client doesn't have a high school education. My client worked for the bus department for 28 years, pretty much his entire adult life. He had become insulin-dependent diabetic into his tenure at the bus department when he was working a desk job. So, again, the district court considered this, the judge considered this, and we said, look, he went right into pulling campers. He was making money on fees that he was getting for the campers, but the expenses were catching up with him. So if you look at the ledger, we put in the ledger, and the defendant doesn't attack the ledger, doesn't say this didn't happen, didn't put on evidence that the expenses he incurred were unreasonable. But if you added it up, the number of trips he took, I think he took 63 trips over a 10-month period. He worked for, you know, 180 days going all over the country pulling these campers. He had a series of calamities that were, you know, uncontested. He was essentially what I would say he was like living on the float. He was getting the fees for pulling the camper and then having to pay out later on through credit cards the expenses associated with it. And so if you looked at it, he actually broke even or lost money over the year. Mr. Macy, just so I understand what happened here, were the damages determinations divided by agreement between the judge and the jury? Yes. We agreed to have the judge determine the back pay remedy. Including mitigation. Including mitigation. And the jury did compensatory. The jury decided compensatory damages. And I don't understand the defendant's quibble to be with anything about the amount other than that my client didn't reasonably mitigate. But, again, first of all, that's reviewed for clear air. And second of all, I think the evidence supported the notion that this was a good shot. And in the cases we relied on saying that, you know, starting your own business, especially in a field that it wasn't like he started trying to, you know, I think you could reasonably say that trying that for 10 months and deciding it didn't work. But he was driving. He was pulling campers, which was right up his alley. So even if we were here on a challenge to the sufficiency of the evidence, I think there was ample testimony at the trial. But, again, we're not here on that. We're here after a jury verdict on an issue that should have been raised after the verdict. On the jury instruction, we took it directly from the federal regulations. Even in a pattern, I'll notice that the pattern instruction refers to the time spent. If you look under, this is D of the pattern, lists job description written, how much time was spent on the job performing, the consequences of not requiring the person to perform. I don't understand how that could be an abuse of discretion to adopt that instruction. So there's nothing further. Thank you. Thank you, Mr. Macy. And how much time does Mr. Craig have? Three minutes. Your Honor, since I didn't have a chance to address damages in my opening argument, I'll address those briefly as well as respond to Mr. Macy's arguments. Mr. Macy is correct that we don't dispute the evidence, the ledger, or the incidents that happened during Mr. Brown's attempt to work in the hauling trailers. We simply contend that it was not a reasonable mitigation attempt, given his history of working for municipality. Is he required to move? I'm not sure he's required to move. This is the only bus company in town, right? It's the only bus company in town, but Anderson is in central Indiana, near other cities that operate bus companies or operate other municipal services. So the way you look at mitigation, if you're not doing exactly what you were doing before, then that's not going to be enough? No, but it does, as the Court has indicated, have to be a reasonable effort. And, you know, I think Mr. Macy indicated there were a series of calamities, and there was, you know, his inexperience running a business, I think, you know, showed. And was it a reasonable effort, given his substantial experience, you know, in municipal employment, to then attempt self-employment? We contend it was not. District Court obviously disagreed. Mr. Craig, I have to say I was troubled in looking at your brief that the opening brief on this point failed to address the Smith case, if I'm remembering the name of it correctly, which had been the case that the district judge had relied upon. The Seventh Circuit case? Yes. Well, that case, you know, again, the case says that self-employment, if reasonable, is a valid mitigation effort. But in this case, we have contended that it is not a reasonable effort. I understand your position. I'm simply suggesting where the district court has hung its decision on one of our cases, the appellant needs to take that on directly in its opening brief rather than hold back for rebuttal. I understand that. Just advice. Thank you. So, you know, in conclusion, we believe it was error for the district court to instruct the jury in a way that included focus on the length of time when it was undisputed that this function arose only in emergency circumstances, and we therefore ask first that the court reverse the order of summary judgment, or on the alternative, reverse the jury verdict and remand for a new trial. Thank you. Thank you, Mr. Craig. The case will be taken under advisement.